Charles Hoyer,               :
          Appellant     :
                             :
     v.                     :
                           :    No. 622 C.D. 2021
County of Lebanon       :    Submitted: June 24, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: August 29, 2022

Charles Hoyer (Requester) appeals pro se from the Lebanon County (County) Common Pleas Court's (trial court) May 10, 2021 order granting in part and denying in part Requester's Right-to-Know Law (RTKL)[1] requests (Requests) for documents from the County District Attorney's Office (DA's Office) and from the trial court's Clerk of Courts (Clerk). Requester presents four issues for this Court's review: (1) whether the trial court correctly denied Requester's request for documents from the Clerk; (2) whether the trial court wrongfully ignored Requester's appeal for over a decade; (3) whether Requester's request was wrongly denied to hide a County employee's unethical conduct; and (4) whether the trial court judge who previously objected to the release of his personal information to Requester pursuant to an RTKL request improperly presided over Requester's appeal.[2] After review, this Court affirms.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] This Court has reordered Requester's issues for ease of discussion.

In 2008 and 2009, Requester was convicted of numerous crimes and sentenced to a term of imprisonment. Requester appealed therefrom, and the Pennsylvania Superior Court affirmed. Thereafter, Requester pursued challenges under the Post Conviction Relief Act (PCRA).[3] The trial court denied Requester's PCRA challenges and said rulings were affirmed on appeal.

In 2010 or 2011, Requester submitted Requests to County officials, seeking "all letters [Requester] sent to the [DA's] Office, including those specifically addressed to [Assistant District Attorney (ADA)] Megan Ryland-Tanner [(ADA Ryland-Tanner)]." Requester's Memo. of Law in Support of RTKL Requests at 1. Requester also asked that the trial court's Clerk produce "conflicts of interests that were filed that would prevent Attorney Casey Shore from being opposing counsel on the same case as [ADA] Ryland-Tanner [(Conflict Request)]." Petition to Compel Clerk of Courts to Respond/Produce Documents at 1. Requester's Requests were administratively denied, and Requester sought review by the Office of Open Records (OOR). By March 7, 2011 correspondence, the OOR dismissed Requester's appeal with prejudice, explaining "[t]he Clerk is a 'judicial agency' and as such is not subject to the jurisdiction of the OOR." OOR March 7, 2011 Letter at 1.

Requester appealed from the Clerk's and the DA's Office's denials to the trial court under Docket Numbers 2011-00627 (627 Appeal) and 2012-01641 (1641 Appeal), respectively.[4] By September 16, 2011 letter to the trial court's Prothonotary, Requester inquired regarding the status of the 627 Appeal. By November 26, 2012 correspondence, Requester sought information from the trial court's Court Administrator regarding the status of the 627 Appeal and the 1641 Appeal. Requester stated therein that he "would like the motions to be processed in a timely fashion[,]" and that "[i]f there is a reason they are not being processed, [he]

---

[3] 42 Pa.C.S. §§ 9541-9546.

[4] Requester sought and was afforded the right to proceed *in forma pauperis* on his appeals.

2

would like to be informed of the reason." November 26, 2012 Letter. By December 4, 2012 memorandum, the trial court's Prothonotary notified Requester:

> I am sending you a copy of docket entries for both cases[,] along with a time-stamped copy of the letter you sent to us. I also forwarded a copy of your letter to . . . Court Administration. Both of your petitions have been filed when the correct paperwork was received as shown on the docket entries.

December 4, 2012 Memorandum. The trial court took no further action with respect to Requester's inquiry.

Between 2016 and 2018 Requester's appeals were scheduled for dismissal due to inactivity. Because Requester filed a statement of his intention to proceed (Statement of Intention) each time, the cases remained in active status. Requester made no other filings between 2018 and 2020. On October 26, 2020, the trial court again notified Requester that his appeals were slated for dismissal due to inactivity. On November 3, 2020, Requester again filed a Statement of Intention. Thereafter, the Prothonotary forwarded the files to the trial court for review and, on December 7, 2020, the trial court scheduled a status conference for January 21, 2021. The trial court also informed the parties that it was "unwilling to allow the . . . matters to be held in abeyance indefinitely." December 7, 2020 Trial Court Order at 2. Following the January 21, 2021 status conference, the trial court notified the parties it was unwilling to further postpone adjudication and ordered the parties to submit briefs for consideration.

On May 10, 2021, the trial court granted Requester's Request in the 1641 Appeal for copies of his letters to the DA's Office and ADA Ryland-Tanner. However, the trial court denied Requester's Conflict Request in the 627 Appeal, explaining:

> We do not know precisely what [Requester] is seeking via this [R]equest. Moreover, the concept of "conflict of

interest" is a legal concept that may be defined differently by [Requester] than it is by the County . . . or the [DA's] Office. Without a more specific definition of "conflict of interest[,"] it would be impossible for anyone to respond to such a request. Moreover, we highly doubt that a document exists that is entitled "conflict of interest[."]

Trial Ct. Op. at 10. Requester appealed to this Court from the trial court's decision regarding the 627 Appeal.[5]

Requester first contends that the trial court erred when it denied his 627 Appeal,[6] claiming: "The documents requested are in the agency's possession, custody and control. These records are available online . . . . Files are indexed and easily searched. Conflicts of interest are filed to ensure fairness by declaring possible divided loyalties. Concealing them undermines the integrity of the system." Requester's Br. at 7 (footnote omitted). In support of his argument, Requester cites *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013), and *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029 (Pa. 2012), noting that the RTKL's general purpose is "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions[.]" *Bowling*, 990 A.2d at 824. Requester provides no further argument in support of this issue.

This Court has explained:

Where a requester seeks to gain access to information under the RTKL, Section 703 of the RTKL puts the initial burden on the requester to provide a written request that "should identify or describe the records sought **with**

---

[5] "This [C]ourt's standard of review is limited to determining whether the trial court committed an error of law, violated constitutional rights, or abused its discretion." *Borough of W. Easton v. Mezzacappa*, 74 A.3d 417, 419 n.3 (Pa. Cmwlth. 2013). "The scope of review for a question of law under the [RTKL] is plenary." *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010) (quoting *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010)), *aff'd*, 45 A.3d 1029 (Pa. 2012).

[6] Requester's entire argument regarding this issue is contained in two short paragraphs.

4

**sufficient specificity to enable the agency to ascertain which records are being requested** and shall include the name and address to which the agency should address its response." 65 P.S. § 67.703; *Mollick* [*v. Twp. of Worcester*], 32 A.3d [859] . . . [(Pa. Cmwlth. 2011)]. In determining whether a request is sufficiently specific, an agency should rely on the common meaning of words and phrases, be mindful of the remedial purpose of the RTKL, and construe the specificity of the request in the context of the request, rather than envisioning everything the request might conceivably encompass. *P*[*a.*] *State Police v. Off*[.] *of Open Rec*[*s.*], 995 A.2d 515, 517 (Pa. Cmwlth. 2010). The fact that a request is burdensome will not, in and of itself, deem the request to be overbroad. *Dep*[*'t*] *of Env*[*'t*] *Prot*[.] *v. Legere*, 50 A.3d 260, 265 (Pa. Cmwlth. 2012). However, **an open-ended request that fails to give a local agency guidance in its search for the information sought may be so burdensome that the request will be found overbroad under the RTKL**.

*Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1142-43 (Pa. Cmwlth. 2017) (emphasis added).

"When considering a challenge to the specificity of a request under Section 703 of the RTKL, this Court employs a three-part balancing test[.]" *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124 (Pa. Cmwlth. 2015). The test examines "the extent to which the request sets forth[:] (1) the subject matter of the request; (2) the scope of the documents sought; and (3) the timeframe for which records are sought." *Id.* "The subject matter of the request **must identify 'the transaction or activity' of the agency** for which the record is sought[]" and "should provide a context to narrow the search." *Id.* at 1125 (quoting Section 102 of the RTKL, 65 P.S. § 67.102). In terms of scope, **the request "must identify 'a discrete group of documents**, **either by type** . . . **or by recipient**.'" [*Pittsburgh Post-Gazette*, 119 A.3d at 1125] (quoting *Carey v. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013)). Lastly, "[t]he timeframe of the request should identify a finite period of time for which records are sought." *Pittsburgh Post-Gazette*, 119 A.3d at 1126; *see also . . . Bagwell*, 155 A.3d [at] 1145 . . . (A request is sufficiently specific where it **enumerates a "clearly**[-

5

]**defined universe of documents**."); *Askew v. Pa. Off*[.] *of the Governor*, 65 A.3d 989, 992 (Pa. Cmwlth. 2013) (A request lacks specificity where "it is open-ended in terms of a timeframe[ and] **overly broad in the scope of documents sought**[.]").

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 179 (Pa. Cmwlth. 2019) (emphasis added; footnote omitted).

A requester's request lacks specificity where "it necessitates traditional legal research and analysis, not only to ascertain that which is being requested, but also to determine whether a particular law and/or document possesses the legal significance necessary to make it responsive to the request." *Askew*, 65 A.3d at 994. Further, this Court has explained that **an RTKL request is insufficiently specific where it requires an agency to review files and make judgments regarding** "**the** *relation* **of the documents to the specific request**." *Legere*, 50 A.3d at 264 (bold emphasis added); *see also Dep't of Corr. v. St. Hilaire*, 128 A.3d 859 (Pa. Cmwlth. 2015).

To determine whether the trial court properly concluded that the Conflict Request lacked the requisite specificity, this Court applies the *Pittsburgh Post-Gazette* balancing test. Here, Requester's Conflict Request demands that the trial court's Clerk produce "**conflicts of interests that were filed** that would prevent Attorney Casey Shore from being opposing counsel on the same case as [ADA] [] Ryland-Tanner." Petition to Compel Clerk of Courts to Respond/Produce Documents at 1 (emphasis added). First, with respect to subject matter, the Conflict Request ambiguously seeks "conflicts of interests . . . that were filed . . . ." *Id.* It does not describe what types of *filings*, or other activities to which it refers, nor does it include parameters for determining a "conflict[] of interest[]." *Id.* Second, regarding scope, the Conflict Request does not identify a discrete group of

6

**documents by their type or by recipient**. Finally, the Conflict Request does not identify a finite time period.

More importantly, in seeking "conflicts of interests," Petition to Compel Clerk of Courts to Respond/Produce Documents at 1, the Conflict Request necessitates legal analysis "not only to ascertain that which is being requested, but also to determine whether a particular . . . document possesses the legal significance necessary to make it responsive to the [Conflict R]equest." *Askew*, 65 A.3d at 994. In attempting to identify such responsive documents, the Clerk would be required to review documents and make judgments, based on a conflict of interest standard, undefined by Requester, and determine which, if any, documents may relate thereto. *See Legere*. Because Requester's Conflict Request lacks sufficient specificity, the trial court properly denied Requester's appeal.

Requester raises three other issues for consideration by this Court. He argues that the trial court judge was biased and should not have heard and decided his appeal. In support of this assertion, Requester complains that the trial court judge: has displayed a hostility towards Requester based on Requester's criminal history; interfered in another RTKL request that Requester submitted seeking information regarding the trial court judge; and that he has a personal friendship with ADA Ryland-Tanner that affected his impartiality and resulted in the Conflict Request's denial.

This Court has held that "[i]ssues not raised at the earliest possible time during a proceeding are waived." *City of Phila. v. DY Props., LLC*, 223 A.3d 717, 723 (Pa. Cmwlth. 2019) (quoting *Grever v. Unemployment Comp. Bd. of Rev.*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010), *superseded on other grounds by* Pa.R.A.P. 1513(d), *as recognized in Morgan v. Unemployment Comp. Bd. of Rev.*, 108 A.3d 181 (Pa. Cmwlth. 2015)). Further, a party waives an issue if he neglects to cite to relevant legal authority in his brief. *See Am. Rock Mechs., Inc. v. Workers' Comp.*

*Appeal Bd. (Bik & Lehigh Concrete Techs.)*, 881 A.2d 54 (Pa. Cmwlth. 2005).  The record does not reflect that Requester ever raised the trial court judge's alleged bias to the trial court or sought the trial court judge's recusal.  Further, Requester's brief contains no legal authority supporting his purported bias argument.  Accordingly, that issue is waived.

Requester also complains that his case languished in the trial court for approximately 10 years, that his status inquiries went unanswered, and that he was required to submit multiple filings to prevent the matter from being dismissed.  Requester provides no rationale why the delay itself entitles Requester to the documents where the Conflict Request was insufficiently specific; and further, Requester's brief contains no legal authority to support his argument.  Accordingly, Requester has similarly waived the issue.

Finally, Requester contends, without supporting legal authority, that the trial court wrongly denied the Conflict Request to shield unethical employee conduct.  As this Court has concluded that the Conflict Request was properly refused as not sufficiently specific, Requester's argument is without merit.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Hoyer,  :
          Appellant  :
                     :
          v.  :
                     :  No. 622 C.D. 2021
County of Lebanon  :

## O R D E R

AND NOW, this 29th day of August, 2022, the Lebanon County Common Pleas Court's May 10, 2021 order is affirmed.


_____
ANNE E. COVEY, Judge